Samuel M. Gold, J.
Five permanent competitive civil service employees of the Department of Social Services of the City of New York bring an article 78 proceeding to declare unconstitutional certain disciplinary procedures invoked against them and to repay to ones of them the fine thereby imposed upon him and to bar respondents from conducting further proceedings against the others. Each of these employees was charged with misconduct in participating in an unauthorized meeting of employees during regular working hours at a welfare center, thereby interfering with the operations at the center.
The Civil Service Law (§75) has long provided that permanent civil service employees in the competitive class shall not be subjected to any disciplinary penalty except upon written charges, an answer in writing, and a full testimonial hearing with the opportunity to be represented by counsel and to summon *48 witnesses on his behalf. The punishment for a finding of guilt may range from a fine to dismissal from the service.
Petitioners complain of a new disciplinary procedure resulting from the enactment of section 1103-1.0 (subd. 2) of the Administrative Code of the City of New York, which provides: “ Except as otherwise provided by law, every head of an agency is empowered: 1. * * * 2. In his discretion, to cause deductions to be made from the salaries, compensation or wages of subordinates of such agency, not exceeding thirty days’ pay, as a fine for delinquency or misconduct.” (Emphasis supplied.)
The italicized words, “ Except as otherwise provided by law ”, render this provision by its own terms inapplicable to permanent competitive civil service employees, because section 75 of the Civil Service Law does provide otherwise as to such employees. To this extent, then, petitioners are entitled to the alternative relief requested, that section 1103-1.0 (subd. 2) does not apply to permanent competitive civil service employees.
Indeed, respondents do not contest that conclusion but urge that the implementation of section 1103-1.0 (subd. 2) by Executive Order No. 427 of the Department of Social Services, as here shown in the cases of these five petitioners, of giving them a choice between accepting a fine recommended by the Bureau of Personnel Administration pursuant to section 1103-1.0 (subd. 2) or requesting a hearing pursuant to section 75, all five petitioners having then chosen the section 75 procedure, completely preserves the rights of petitioners and all other permanent competitive civil service employees.
Executive Order No. 427 provides that, after being informed of the alleged delinquency or misconduct and given an opportunity to submit any statement in rebuttal, such employee shall have the choice to elect within three days after an interview whether to accept the penalty of a fine under section 1103-1.0 (subd. 2), in which event he may have the Commissioner review only his claim of excessiveness, or that the disciplinary procedure of section 75 apply, in which event he is subject to whatever penalties may be imposed after a section 75 hearing. It appears that the policy and practice followed with regard to Executive Order No. 427, as set forth in respondents’ answering papers and as here shown in the cases of these five petitioners, is to advise the employee of his right of representation at the interview by an attorney or union representative and to inform the employee of the amount of the fine, if any, recommended and then give him a three-day choice to accept the fine or request a section 75 hearing. It will be assumed that such policy and prae *49 tice is the department’s practical construction of its Executive Order.
Since section 1103-1.0 (subd. 2) is not applicable as such to permanent competitive Civil Service employees and none of the five petitioners accepted the offer of a fine under it, they are not aggrieved persons and do not have standing to challenge its constitutionality. Thus, the court does not reach the question of whether one who is not a permanent competitive civil service employee may validly challenge the section.
Petitioners do have standing to challenge the implementation of section 1103-1.0 (subd. 2) by Executive Order No. 427. Petitioners’ attack upon this new disciplinary procedure, that it encourages a civil servant to accept a recommended fine rather than risk a possibly severer penalty by exercising his “ constitutional ” (actually, statutory) right to a hearing, is based on United States v. Jackson (390 U. S. 570). In Jackson, defendant was faced with the choice of pleading guilty to kidnapping and obtaining a lesser penalty under the Federal statute or exercising his constitutional right to a jury trial and running the risk of a death penalty. It was said (p. 583) that the statute, as drawn, “ needlessly ” encouraged guilty pleas and (at p. 581): “ If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who chose to exercise them, then it would be patently unconstitutional.” However, in North Carolina v. Alford (400 U. S. 25 [Nov. 23, 1970]), it was held that, though defendant, while protesting innocence, had pleaded guilty to a reduced charge under the North Carolina murder statute to avoid the threat of the death penalty if he went to trial, the plea was not to be rejected if it met the reasonable standard of a ‘ ‘ voluntary and intelligent choice among the alternative courses of action open to the defendant” (p. 31).
The principle enunciated in Jackson (supra) is wholly inapplicable to petitioners and to these circumstances. They all refused to accept the fines, i.e., they did not ‘ ‘ plead guilty ’ ’, and none of them was induced to waive his right to a section 75 hearing. Moreover, the matter of disciplining employees cannot possibly be analogized to a kidnapping charge carrying a possible death penalty, nor a statutory provision for a hearing before a hearing officer to the constitutional right to jury trial. In Matter of Hecht v. Monaghan (307 N. Y. 461, 468) the court said: ‘ ‘ Doubtless when dealing with its own employees, the action of an administrative body in suspending or discharging them is a merely administrative function, and no notice or hearing is necessary unless specifically enjoined by statute ”. The attempt *50 to inflate the problem to constitutional dimensions is misplaced.
The real question is the basic fairness of this new disciplinary procedure. It would seem that, where a civil service employee charged with delinquency or misconduct is advised of the fine to be assessed and is given the right to make a voluntary choice within three days as to whether he desires to have a section 75 hearing and run the risk of a greater penalty, the procedure represents an advantage to such’employee. The danger that petitioners envision, of employees entirely innocent'of any misconduct accepting a recommended fine in order to avoid the risk of a greater penalty after a section 75 hearing, is extremely far-fetched for an alleged administrative infraction.
In any event, it is quite clear that the procedure causes no detriment to the employee if he elects to have the section 75 hearing, despite the ‘ ‘ constitutional ’ ’ argument of petitioners that the section 75 hearing would be “ tainted ” by the prejudicial prehearing finding of “guilt” by the Bureau of Personnel Administration. Obviously, the so-called finding of guilt in the department’s recommendation of a fine is no more prejudicial than the filing by that same department of the written charges and specifications as required for all section 75 hearings: in either case it means no more than that the department, after investigation and interview, has taken the position that the employee has committed an act of delinquency or misconduct. Accordingly, the request to rescind the penalty of a fine imposed on the one petitioner whose section 75 hearing was held and to permanently bar the postponed section 75 hearings of the other petitioners, is denied.